UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SATNAM SABHARWAL,

                Plaintiff,

        - against -

MOUNT SINAI MEDICAL CENTER,
QUEENS HOSPITAL CENTER, and WON
CHEE,

                Defendants.
-----------------------------------------------------------X

**ORDER**

09 CV 1950 (JBW)

On May 8, 2009, plaintiff Satnam Sabharwal filed this action against defendants Mount Sinai Medical Center (the "Hospital"), Queens Hospital Center, and Won Chee, alleging that she was subjected to a hostile work environment and unlawful discrimination in that she was not reappointed as Assistant Director of Anesthesia on account of age, sex, and disability discrimination, in violation of federal, state, and local law. Currently pending before this Court is plaintiff's request for production of all records maintained by the Hospital's Medical Executive Committee relating to plaintiff, including all Peer Reviews of plaintiff during her employment, and the personnel files of Dr. Won Chee.

On May 14, 2010, plaintiff advised the Court that she had been unable to obtain certain discovery from defendants, including Dr. Chee's personnel files, Peer Reviews of Plaintiff, and the Executive Committee Rules. (Pl.'s 5/14 Ltr.¹ at 1-2). On May 27, 2010, having received no response from defendants to plaintiff's May 14, 2010 letter, the Court Ordered the parties to

---

¹Citations to "Pl.'s 5/14 Ltr." refer to the letter submitted by plaintiff's counsel on May 14, 2010.

1

appear for a conference to discuss the issues raised in plaintiff's letter. At the conference, which took place on June 16, 2010, defendants argued that many of the documents requested by plaintiff are protected by the "quality assurance" and "peer review" privileges. After hearing both parties on the issue, the Court Ordered defendants to file supplemental papers that explained the legal basis for their claims of privilege. Additionally, the Court Ordered defendants to submit other documents, including peer review files, to the Court for in camera review.

On July 8, 2010, in response to the Court's Order, defendants filed a letter that provides legal authority in support of their claims of privilege. (Defs.' Ltr.[2] at 2-7). Defendants object to the production of the requested documents, arguing that these requests seek privileged information that is protected from disclosure under the peer-review privilege, quality assurance privilege, and self-critical analysis privilege. (Id. at 1). On July 13, 2010, plaintiff was Ordered to respond to the legal arguments made in defendants' July 18, 2010 letter, which plaintiff did on September 20, 2010.

Plaintiff argues that these documents are relevant and material to proving that she was qualified for the position that she held or that she was performing her job in a satisfactory manner. (Pl.'s 9/20/10 Ltr.[3] at 1 (citing Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (holding that to establish a prima facia case under Title VII, a plaintiff must show: 1) she belonged to a protected class; 2) she was qualified or performing in a satisfactory manner; 3) she suffered an adverse employment action; and 4) the circumstances give rise to an inference of

---

[2]Citations to "Defs.' Ltr." refer to the letter submitted by defendants' counsel on July 8, 2010.

[3]Citations to "Pl.'s 9/20/10 Ltr." refer to the letter submitted by plaintiff's counsel on September 20, 2010.

2

discrimination)).

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits "discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). This action is brought pursuant to both federal civil rights laws and state and city human rights laws. Rule 501 of the Federal Rules of Evidence addresses the analysis of privileges and provides that:

> [e]xcept as otherwise required . . . the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law.

Fed. R. Evid. 501.

It is well-established that "[q]uestions of privilege in federal civil rights cases are governed by federal law." King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (citing cases); see also Johnson v. Nyack Hosp., 169 F.R.D. 550, 557 (S.D.N.Y. 1996) (citing von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987). (See also Defs.' Ltr. at 3 (recognizing that "New York state law does not govern discoverability and confidentiality in federal civil rights actions")). Where, as here, the claims of privilege are based on state laws and rules and where no federal rule governs the kinds of privileges asserted, the Court is required to balance four factors: 1) the need for the information to enforce federal substantive and procedural policies; 2) the importance of the state policy that supports the rule of privilege and the likelihood that recognizing the

3

privilege will advance the state policy; 3) the special need of the litigant who seeks the information; and 4) any adverse impact on local policy if the privilege is not recognized. See Skibo v. City of New York, 109 F.R.D. 58, 61 (E.D.N.Y. 1985) (citing United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)).

In analyzing claims of privilege, the Court is mindful that "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." United States v. King, 73 F.R.D. at 105; see also Burka v. New York City Transit Auth., 110 F.R.D. 660, 664 (S.D.N.Y. 1986). At the same time, it is clear that "[f]ederal law disfavors privileges barring disclosure of relevant evidence," King v. Conde, 121 F.R.D. at 187 (citing Herbert v. Lando, 441 U.S. 153, 175 (1979)), and, indeed, "the overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." Burke v. New York City Police Dep't, 115 F.R.D. 220, 225 (S.D.N.Y. 1987) (citing inter alia von Bulow v. von Bulow, 811 F.2d at 141-42).

With these basic principles in mind, the Court reviews each of defendants' claimed privileges.

1) Peer Review Privilege

Defendants first contend that disclosure of plaintiff's records[4] would violate certain provisions of New York's Public Health Law that require information gathered in connection

---

[4]The documents comprising the plaintiff's employee file, which have been produced to the Court for in camera review, are labeled with the Bates Numbers MED BD 1 through MED BD 355.

4

with the periodic review of a physician's credentials and competence be kept confidential. See N.Y. Pub. Health L. § 2805-j (requiring periodic review of physicians); N.Y. Pub. Health L. § 2805-m (providing that information collected pursuant to § 2805-j "shall be kept confidential and shall not be released except to the department . . ."). See also Logue v. Velez, 92 N.Y.2d 13, 17, 699 N.E.2d 365, 367, 677 N.Y.S.2d 6, 8 (1998) (holding that § 2805-m confers confidentiality on information gathered pursuant to § 2805-j). Defendants also rely on Section 6527(3) of the New York Education Law which provides that "[n]either the proceedings nor the records relating to performance of a medical or a quality assurance review function or participation in a medical and dental malpractice prevention program . . . shall be subject to disclosure." N.Y. Educ. L. § 6527(3).

In Logue v. Velez, the New York Court of Appeals explained that the purpose of ensuring confidentiality of the review process is "to encourage thorough and candid peer review of physicians, and thereby improve the quality of medical care." 92 N.Y.2d at 17, 699 N.E.2d at 367, 677 N.Y.S.2d at 8. The court noted that the policies behind these provisions of the New York Education Law and Public Health Law were part of the "comprehensive malpractice reforms" instituted by the state legislature in the 1980s, which were "designed to restrain oppressive increases in medical malpractice insurance premiums by introducing procedural and substantive restrictions on malpractice suits, while also reducing the incidence of malpractice by requiring more peer self-policing." 92 N.Y.2d at 17-19, 699 N.E.2d at 367, 677 N.Y.S.2d at 8. The court further noted that the protections in Public Health Law §§ 2805-j and 2805-m "were added to the Public Health Law to 'clarify that existing protection against disclosure of materials relating to quality assurance activities *apply to hospital malpractice prevention and incident*

5

*reporting.*'" Id. (citations omitted) (emphasis added).

Defendants argue that because the documents sought by plaintiff fall squarely within the category of peer review files and other files collected by the Hospital's Medical Board in connection with reviewing physician's privileges, they should be maintained in confidence in order to encourage "the free flow of information between hospital staff and doctors." (Defs.' Ltr. at 3). Citing the Supreme Court's holding in Jaffee v. Redmond, where the Court recognized the psychotherapist-patient privilege, 518 U.S. 1, 18 (1996), defendants argue that recognizing the peer review privilege in these circumstances protects an even greater interest "since it relates not just to an individual patient's care, but serves to promote more effective patient care throughout a hospital." (Defs.' Ltr. at 4).

Although in some cases, courts have found that the state's peer review privilege could be honored because there was "little if any cost to federal substantive or procedural policy," Komlosi v. New York State Office of Mental Retardation & Dev. Disabilities. No. 88 CV 1792, 1992 WL 77544, at *2 (S.D.N.Y. Apr. 3, 1992),[5] other courts have held that a civil rights plaintiff's need for these documents outweighs the state law privilege. See, e.g., Memorial Hosp. v. Shadur, 664 F.2d 1058 (7th Cir. 1981); Johnson v. Nyack Hosp., 169 F.R.D. 550. These latter courts recognized that while the state's interest in encouraging candor it its peer review evaluations may well be an important one, in cases alleging employment discrimination, "the

---

[5]In Komlosi, the court held that documents collected during an investigation by the New York State Commission on Quality of Care for the Mentally Disabled were protected under New York Educ. Law § 6527(3), where no report or findings had ever been issued, where the documents reviewed by the Commission had been disclosed to plaintiff, and where the individuals interviewed by the Commission were available for deposition. 1992 WL 77544 at *2.

only proof of employment discrimination that a plaintiff might have may be contained in such records." Johnson v. Nyack Hosp., 169 F.R.D. at 558 n.12. Indeed, in Pal v. New York University, the court held that "in actions 'not based on claims of medical malpractice, where the underlying policy of improving medical care' is not implicated, courts have often 'compelled disclosure of peer review committee findings.'" No. 06 CV 5892, 2007 WL 4358463, at *6 (S.D.N.Y. Dec. 10, 2007) (citing Ryan v. Staten Island Univ. Hosp., No. 04 CV 2666, 2006 WL 1025890, at *3 (E.D.N.Y. Apr. 13, 2006)).

It is also arguable that the Supreme Court has resolved this issue in its decision in University of Pennsylvania v. EEOC, where the Court held that neither federal common law nor the First Amendment warranted recognition of a peer review privilege in the context of tenure review files where the EEOC sought discovery of files of a female faculty member who had been denied tenure and files of five male faculty members who were the alleged beneficiaries of the disparate treatment. 493 U.S. 182 (1990). While the current dispute centers around a medical peer review privilege, at least one court in this circuit has concluded that in light of the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et seq. ("HCQIA"), and Congress' silence in not including a peer review privilege therein, that "this Court is not free to recognize a privilege for medical peer review materials." Johnson v. Nyack Hosp., 169 F.R.D. at 560-61 (citing Teasdale v. Marin Gen. Hosp., 138 F.R.D. 691, 694 (N.D. Cal. 1991) (noting that "Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA")). (But see Defs.' Ltr. at 5-6 (citing Johnson and Teasdale)).

In this case, the Court finds it unnecessary to decide whether the decision in University of Pennsylvania v. EEOC precludes the recognition of a peer review privilege because under the

7

balancing test prescribed by United States v. King, the plaintiff's need for this information to enforce an important federal substantive policy far outweighs any theoretical chilling effect that disclosure of these peer reviews may have. Having carefully reviewed the files in camera, the Court notes that whatever documents in Ms. Sabharwal's file that could be considered "peer review" documents all contain generally favorable reviews of plaintiff's performance. Furthermore, most of the information in plaintiff's file sought to be protected by defendants are not even peer reviews or evaluations, but consist of plaintiff's own applications for appointment and curriculum vitae, consent forms signed by plaintiff, letters to plaintiff, form recommendations for appointment or advancement, educational records and copies of certificates demonstrating plaintiff's training and qualifications, licensing information obtained from public sources, including internet sources, information relating to plaintiff's malpractice insurance coverage, and verifications from various sources that there were no malpractice claims pending against her. There are also numerous pages, such MED BD 103-05, that appear to be printouts of search results that simply indicate that no results were found. Furthermore, MED BD 114 is a completely blank page.

However, there are several documents, such as computerized printouts of Verification Reports from the New York State Education Department Division of Professional Licensing Services (Bates Nos. MED BD 54 and 57), which contain information relating to individuals other than Ms. Sabharwal. For these two documents, all of the rows of information that pertain to individuals other than plaintiff should be redacted, but the column titles and descriptions at the top of the page should remain visible. There are also searches indicated on pages MED BD 106 and 111 that also indicate the names of other individuals searched. Those names should be

redacted for purposes of producing these documents.

Furthermore, there are other documents, listed by Bates Number, Nos. 134-35, 160-61, 163, 169, 177-78, 182, 190-91, 195, 209-12, 216, 223-28, 237, 242-45, 259-60, and 263, that are evaluative reports of Ms. Sabharwal with the names, signatures, and job titles of the reviewers indicated. These documents should be produced redacted only as to this identifying information; such redactions will adequately preserve anonymity and promote the policies behind the New York Public Health Law and Education Law. Lastly, pages MED BD 164-65 appear to be the evaluation of a different doctor altogether, so those two pages should be completely redacted. Otherwise, the MED BD documents should be produced to plaintiff in full.

2) <u>Other Privilege Claims</u>

Although defendants' letters mention a "quality assurance privilege" and "self-critical analysis privilege," the defendants fail to address the applicability of these state law privileges to the files at issue. However, having reviewed the files, the Court concludes that under the same balancing analysis applied to the claims of peer review privilege, plaintiff's need for these documents outweighs any countervailing state policy concerns.

Furthermore, defendants make the argument that "the information contained in the documents plaintiff seeks are not relevant to any claim or defense of any party" and that plaintiff does not need these documents to pursue her case because she "does not allege that the peer reviews or other information contained in her credentialing files themselves are discriminatory or led to the adverse action at issue. . . . Nor do defendants claim that the reasons for their decision was [sic] in any way related to plaintiff's competence as an Anesthesiologist." (Defs.' Ltr. at 7).

9

The Court disagrees. Plaintiff asserts that she was terminated for discriminatory reasons, despite her satisfactory performance. In order to prove her claim, as already noted above, plaintiff must demonstrate that she was otherwise qualified for the position or was performing in a satisfactory manner and that the circumstances of the adverse employment action from which she suffered give rise to an inference of discrimination. (See discussion supra at 2; Pl.'s 9/20/10 Ltr. at 1 (quoting Feingold v. New York, 366 F.3d at 152)). Here, the absence of any negative evaluations or any mention of problems or issues relating to plaintiff's performance may be highly relevant to not only establish her prima facie case, but also to dispute defendants' reasons for her termination. Plaintiff's employee file and peer review evaluations may be "the only proof of [those elements of her] employment discrimination" claim. Johnson v. Nyack Hosp., 169 F.R.D. at 558 n.12. They are therefore highly relevant to her case and should be produced.

### 3) Dr. Chee's File

Defendants have also produced for in camera review the personnel file of Dr. Won Chee, plaintiff's supervisor, which plaintiff had previously requested. (See Pl.'s 5/14 Ltr. at 2). Although neither party addressed the relevance of this file in their letters to the Court, the Court has reviewed the file to determine if there have been any other complaints of discrimination lodged against Dr. Chee or if there are any documents that might be relevant to plaintiff's claim. Based on the Court's review, the Court finds that nothing in Dr. Chee's file is remotely relevant to plaintiff's claims or is likely to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

10

claim or defense . . . the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"); Edwards v. Center Moriches Union Free School Dist., No. 05 CV 2735, 2009 WL 604928, at *2 (E.D.N.Y. March 9, 2009). Accordingly, the Court declines to Order defendants to disclose any portion of Dr. Chee's file at this time.

## CONCLUSION

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 4, 2011

Cheryl L. Pollak
United States Magistrate Judge